# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**JON & SHELLY HYMES,**

    **Plaintiffs,**

    **v.**

**DISTRICT OF COLUMBIA,**

    **Defendant.**

Civil Action No. 02-2276 (PLF/JMF)

## REPORT AND RECOMMENDATION

This case is before me for a Report and Recommendation pursuant to LCvR 72.3.  I herein take up plaintiffs' Motion for Summary Judgment ("Plains. Mot.") and Defendant's Motion for Summary Judgment ("Defs. Mot.).  For the reasons stated below, I recommend that plaintiffs' motion be denied and that defendant's motion be granted.

## BACKGROUND

S.H. is a six-year-old boy who suffers from autism. Complaint ("Comp.") ¶ 4.  His parents, Mr. and Mrs. Jon Hymes ("plaintiffs"), bring this action against the District of Columbia ("defendant") on the minor's behalf, under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and 42 U.S.C. § 1983.[1] Id. ¶ 1.  Defendant operates the District of Columbia Public School System ("DCPS") and is responsible for implementing the IDEA with regard to disabled children who reside in the District of Columbia. Id. ¶ 3.

During the 2001-2002 school year, S.H. attended the River School, a private school. Id. ¶

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

5.  In February of 2002, plaintiffs visited the McLean School ("McLean"). Plains. Mot., H.O.

Decision at 5.  On May 28, 2002,[2] DCPS convened a meeting in order to develop a new

Individualized Education Program ("IEP") for S.H.. Id. ¶ 7.  At the meeting, DCPS

representative Cassandra Williams Pinkey ("Pinkey") proposed the autism program at Myer

Elementary School ("Myer ES") as an appropriate placement for S.H. for the 2002-2003 school

year. Id. ¶ 8; Plains. Mot., H.O. Decision at 4.  No details about Meyer ES were given by DCPS

at the meeting, but plaintiffs agreed to visit the school to learn more about the program. Plains.

Mot., H.O. Decision at 4.  Horace Mann Elementary School was also discussed at the meeting

and ultimately rejected in favor of Meyer ES. Id.

On August 19, 2002, plaintiffs notified DCPS Assistant Superintendent Anne Gay, by

letter, of their unilateral intent to enroll S.H. at McLean. Comp. ¶ 10; Administrative Record

("A.R.") at 48.  On the same day, but by a separate letter, plaintiffs also requested a due process

hearing. Plains. Mot., H.O. Decision at 5; A.R. at 53.  Plaintiffs never received a response to

their letter notifying DCPS of their unilateral decision to place S.H. at McLean.

On October 7, 2002, a due process hearing was held in order to determine whether or not

plaintiffs were entitled to be reimbursed for the cost of sending S.H. to McLean. Comp. ¶ 12.

Hearing Officer Robin Boucher ("the Hearing Officer") concluded that DCPS did not have to

reimburse plaintiffs for S.H.'s education at McLean. Id. ¶ 13.

**DISCUSSION**

I.      The Hearing Officer's Decision

---

[2] Although the complaint states that the May 2002 IEP meeting occurred on the 29th, other
documents, including the hearing officer's report, indicate that the meeting occurred on the 28th.

      A.   Legal Standard for Review of the Hearing Officer's Decision

In reviewing a hearing officer's decision under the IDEA, "the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).  When determining whether plaintiffs' parents may be reimbursed for tuition they have paid to a private institution, courts must determine 1) whether FAPE was denied and 2) whether the private school placement was proper for the child.  The court then applies the two-part test set forth by the Supreme Court in Bd. of Educ. of Hendrick Hudson Sch. Dist. v. Rowley, 458 U.S. 176 (1982).  First, the court must consider whether "the State has complied with the procedures set forth in the Act." Id. at 206.  Second, the court must consider whether "the individualized education program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." Id. at 207.

      B.   The Hearing Officer's Findings and Conclusions

The hearing officer concluded that "the parties were on two separate tracks" as to the placement of the child for the 2002-2003 school year.  She indicated that 34 C.F.R. § 300.503(a)(1)(I) requires written notice to be given to the parents of a child with a disability a reasonable time before the public agency proposes to change the educational placement of the child.  She then concluded that there was an unreasonable lapse of time when DCPS issued no formal placement notice for 2002-2003 and when the parents did not communicate with DCPS.  Plains. Mot. H.O. Decision at 6.  Thus, the question she posed for her consideration–"Did DCPS fail to issue a prior notice within a reasonable time," id., was not specifically answered because it appeared that both parties caused the lateness of the notice.  Instead, she issued a specific

remedy by issuing the following order:

>    *    DCPS shall issue a prior notice of placement at the Meyer
> ES autism program within five school days of receipt of the
> parents's written notification that they have visited the program
> and approved it; in the alternative, DCPS shall reconvene an IEP
> meeting to consider other placement options within 10 school days
> of receipt of the parents' written notification that they have visited
> but do not approve of a Meyer ES autism program placement.
>
>    *    DCPS shall provide 72 hours of compensatory education in
> the form of speech/language therapy by an independent provider of
> the parents' choice at a rate not to exceed $60.00 per hour; this
> award stands until exhausted.

Id. at 10.

II.    Analysis

   A.    Procedural Compliance with the IDEA

   Included in the procedural protections afforded by the IDEA is the right to "written prior

notice to the parents of the child whenever such agency . . . proposes to initiate or change . . . the

identification, evaluation, or educational placement of the child, in accordance with subsection

(c) of this section, or the provision of a free appropriate public education to the child." 20 U.S.C.

§ 1415(b)(3) (1999).  The content of the prior written notice shall include, in pertinent part, the

following safeguards: "(1) a description of the action proposed or refused by the agency; (2) an

explanation of why the agency proposes or refuses to take the action; (3) a description of any

other options that the agency considered and the reasons why those options were rejected; (4) a

description of each evaluation procedure, test, record, or report the agency used as a basis for the

proposed or refused action; [and] (5) a description of any other factors that are relevant to the

agency's proposal or refusal." 20 U.S.C. § 1415(c) (1999).  The main purpose behind this notice

4

provision "is to provide sufficient information to protect the parents' rights under the Act.  It should enable the parents to make an informed decision whether to challenge the DCPS's determination and to prepare for meaningful participation in a due process hearing on their challenge." Kroot v. District of Columbia, 800 F.Supp. 976, 982 (D.D.C. 1992).

     B.    <u>Plaintiff's Argument</u>

Plaintiffs argue that defendant violated two of the IDEA's procedural safeguards.  First, plaintiffs contend that DCPS failed to issue a Notice of Proposed Placement ("NOPP") for Meyer. Plains. Mot. at 3.  Second, plaintiffs contend that DCPS failed to respond to plaintiffs' notice of intent to unilaterally place S.H., dated August 19, 2002. Id. at 4.  These two procedural violations, plaintiffs argue, resulted in a denial of FAPE to their son. Id.

     C.    <u>Defendant's Argument</u>

For its part, DCPS concedes that it failed to issue an NOPP. <u>Defendant's Opposition to Plaintiffs' Motion for Summary Judgment</u> ("Defs. Opp.") at 4.  However, DCPS argues that "the procedural irregularity did not deprive S.H. of substantive rights." Id.  In other words, DCPS argues that plaintiffs had actual notice of the proposed placement at Meyer ES as evidenced by Mr. Hymes' signature on the IEP and his stated willingness  to visit Meyer ES. Id. at 12.

Second, DCPS argues that under the "stay put" provision of the IDEA, plaintiffs were obliged to keep H.S. in his current placement during the pendency of any review proceedings. Defs. Opp. at 3.  Specifically, DCPS argues that the "[p]arents are not entitled to private school tuition reimbursement where a public school alternative was appropriate and where the parents were given a chance to have their objections to the individualized program heard." Id. at 2-3.  Thus, DCPS contends that plaintiffs acted prematurely by unilaterally deciding to move S.H. prior to any determination that defendant failed to provide FAPE and that plaintiffs are therefore

not entitled to any tuition reimbursement. Id. at 3.  Ultimately, DCPS argues that although there may have been procedural violations of the IDEA, these violations were technical and did not deny plaintiffs any of the substantive rights afforded by the statute. Id. at 4.

As plaintiffs acknowledge, they can prevail only if they establish that any violation of the procedural requirements that must attend the issuance of a NOPP in itself requires the conclusion that the child has been denied FAPE, mandating reimbursement of the tuition they paid to the McLean School. But,[3] all Circuits that have considered the question have rejected the *per se* approach in favor of a showing that the violation charged did substantive harm. DiBuo v. Bd. of Educ. of Worcester Cty., 309 F.3d 184, 190-91 (4th Cir. 2002); Doe v. Alabama State Dept. of Educ., 915 F.2d 651, 661-64 (11th Cir. 1990); Muth v. Cent. Bucks Sch. Dist., 839 F.2d 113, 127 n.15 (3rd Cir. 1988).  See also Evans v. Dist. No. 17 of Douglas Cty., 841 F.2d 824, 828-29 (8th Cir. 1988).  Hence, a violation of the NOPP requirements will be disregarded as harmless if the parents were nevertheless fully engaged in the process that developed the IEP. Allan G. Osborne, To What Extent Can Procedural Violations of the IDEA Render an IEP Invalid 185 Ed. Law. Rep. 15, 17 (April 8, 2004) (citing Scituate Sch. Comm'n v. Robert B., 620 F.Supp. 1224, 1228 (D.R.I. 1985)); Doe v. Alabama St. Dept. of Educ., 915 F.2d 651 (11th Cir. 1990); Hiller v. Bd. of Educ., 743 F. Supp. 958 (N.D.N.Y 1990);  Livingston v. De Soto Cty. Sch. Dist., 782 F.Supp. 1173 (N.D. Miss. 1992); Salley v. St. Tammany Parish Sch. Bd., 57 F.3d 458 (5th Cir. 1995). While this Circuit has not reached and resolved the question in as dispositive a fashion,[4] the

---

[3] Compare Tice v. Botetourt Cty. Sch. Bd., 908 F.2d 1200, 1207-08 (4th Cir. 1990), with Hall v. Vance Cty. Bd. of Educ., 774 F.2d 629, 635 (4th Cir. 1985).

[4] Andersen v. District of Columbia, 877 F.2d 1018, 1021 (D.C. Cir. 1989) (avoiding issue but holding that Leonard v. McKenzie, 869 F.2d 1558 (D.C. Cir. 1989) required conclusion that administrative foul-up that did no harm did not warrant relief).

trend is surely towards the same conclusion.  Compare Leonard v. McKenize, 869 F.2d 1558, 1562 & n.3 (D.C. Cir. 1989), with Abney v. District of Columbia, 849 F.2d 1491, 1496 (D.C. Cir. 1988).  See also Andersen v. District of Columbia, 877 F.2d at 1021.

Finally, this Court has also indicated that "a violation of the procedural safeguards guaranteed by IDEA compels the conclusion that the child has been denied a free and appropriate public education if that violation has done substantive harm." Kingsmore v. District of Columbia, 2005 WL 435265, at *6 (D.D.C. Feb. 23, 2005), (citing Schoenbach v. District of Columbia, 309 F. Supp. 2d 71, 78 (D.D.C. 2004)).  See Shaw v. District of Columbia, 238 F. Supp. 2d 127, 136 (D.D. C. 2002); McAdoo v. McKenzie, 1998 WL 9592 (D.D.C. Jan. 28, 1988).

Moreover, it is not even necessary to consider the substantive harm done in this case.  By focusing solely on the Hearing Officer's determination that plaintiffs and their child were done no harm by the DCPS's not issuing the NOPP, plaintiffs lose sight of the forest for the trees.  The hearing officer remedied the violation that occurred by ordering DCPS to issue an NOPP placing the child in the Meyer ES autism program within five days of the parents' notifying DCPS that they have visited the school and approve of their child's placement in it.  If, on the other hand, the parents indicate in writing that Meyer is unacceptable, DCPS must reconvene an IEP meeting within 10 days of the parents' notification to consider other placement options.  Additionally, DCPS must provide the child with 72 hours of compensatory education in the form of speech/language therapy by an independent provider of the parents' choice.  Thus, the true question presented is whether the violation of the NOPP requirements as remedied by the Hearing Officer's determination denied the child FAPE.  Given their *per se* approach, plaintiffs do not even make that claim.  If they did, it would have to be rejected.  Thanks to the Hearing

Officer's decision, the parents are put in the position they would have been had the NOPP requirements all been met in a timely manner. As remedied, the violation was truly harmless and cannot possibly justify the award of compensation.  Such an award is a windfall to the parents and a punishment of the DCPS that is utterly unjustified by the IDEA or its interpretation by the courts.

## CONCLUSION

Analyzed in accordance with the two-part test established by the Supreme Court in Rowley, plaintiffs have failed to establish that DCPS committed either procedural or substantive violations of the IDEA.  Therefore, I recommend that DCPS *not* be ordered to reimburse plaintiffs for S.H.'s education at McLean for the academic year 2002-2003 to date but that DCPS be ordered to comply with the Hearing Officer's order.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).**

Dated: 

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE